Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and its honorable court. Thank you, Kim. Welcome to everybody. Having looked at today's schedule, I think we are still allegedly in the en banc courtroom in New Orleans, but maybe we have shifted the designated courtroom. We have three arguments to hear today. On this first one, we have a special occasion of having a law student argue in front of us. We look forward to that, Ms. Klump, and I'm sure you do as well with whatever level of excitement that brings to you. But it's an important case, and we're glad to have the assistance of both you and Mr. Hoffman, as well as the court. Ms. Klump? May it please the court. My name is Chelsea Klump. I'm a student attorney with the University of Houston Law Center, and I represent petitioners in this case. I will be arguing for 15 minutes and respectfully request five minutes of rebuttal for Professor Jeffrey Hoffman, also of the University of Houston Law Center. You may proceed. Thank you. This case is about a mother, Ms. Lopez De Villeda, and her two sons, who escaped to the United States after suffering persecution in El Salvador, including the murder of the husband and father, Mr. Villeda, after a series of threats and violence. On appeal, petitioners have three points. First, that petitioner's case suffered substantial prejudice due to the ineffective assistance of counsel of petitioner's prior attorney. Two, that the board erred in its application of an erroneous legal standard with regard to political opinion. Ms. Klump, let me ask you about that first point and how that played out. It seems to me the principal argument is that the initial counsel at the hearing in front of the IJ in 2018, I guess it was, should have raised LEA, matter of the BIA's opinion before the attorney general had revised it. I looked at the transcript of that. Not much happened at the hearing that I think you're talking about. You have your client testify. There's a little bit of back and forth with the judge. After that, then the judge says, we'll have, I forget what the judge called it, we'll have argument. And there were no cases, best I could tell, cited by anybody. Was there any No, your honor. So let me ask, where was the default? Should there have been a more robust legal argument citing cases? DOJ didn't either or whoever, DHS at that stage, I guess. How should this have played out and how unusual would that have been at the IJ level for whatever you say should have happened? Yes, your honor. That is especially unusual because petitioners have the burden of demonstrating how the particular social group is cognizable and how the particular social group is one central reason for the persecution that they suffered. And it is a very strict legal framework that is illustrated in LEA, especially for family membership, which is the case here. Whereas he did not elaborate, he did not articulate a particular social group in the context of what it was, not just that they were family, but are you saying, I'm sorry to interrupt you, but that's the experience for oral argument. Is it the argument or is it the questioning of the, at that stage, respondent, your client, that's the problem? Your honor, it's the totality of all of it. Not only did the prior attorney fail to demonstrate the facts of this case and how they fit into a legal framework, they failed to provide any legal framework whatsoever. So the IJ was left with no choice, but to make do with what they had. And that is it. And you can tell from the record that the facts are there, that there was persecution, that they were sought out because of this membership in a transportation co-op. They were threatened for that very reason. Even at the funeral of Mr. Villeta, they were threatened with their lives if they went back home, which is why they escaped, your honor. And counsel, he did not bring out these arguments. He did not bring these evidence before the IJ. He did not put them within the relevant legal framework in order to even show asylum that if despite this wealth of compelling evidence, their case was doomed because he failed to do the bare minimum factually, legally. And on top of that, he affirmatively cut off a viable avenue with relief with regard to the ground of political opinion, which is a viable avenue of relief that because... Let me ask counsel about the, going back to Judge Southup's question about the briefing on the LEA decision or failure to really deal with it. How did that prejudice you if the BIA and the IJ did find a protected group and just, that's the way I read it, correct me if I'm wrong, but just found no past persecution, no future threat of persecution and then no nexus. Because didn't LEA just turn on the definition of whether you can establish a family unit as a protected group? Your honor, it did turn on whether or not you could establish family unit as a group, but it also stood for the fact that you have to show how that family group was one central reason for the persecution, how that nexus like played into that family group. And so it's more than just whether or not there was a cognizable group, it was also how that played into nexus, also how that persecution applied to them because of this group. So it's much more than just being able to articulate how, whether or not this is a cognizable group, but also so much more regarding the ability to find asylum in this case whatsoever. One other question about the ineffective assistance. Our court has repeatedly said, we'll assume there's a due process claim if you can prove that, but we haven't actually decided it. I looked, it seems like there's a circuit split, a healthy majority do recognize that possibility of that as a due process claim, but I take it you're asking us to actually officially recognize it here, but I didn't see where you briefed or really argued why, the law on that. Your Honor, regarding whether or not this is a due process question. Right, forgetting the facts, as a general matter, whether there is a due process right to effective assistance if you have a lawyer in an immigration proceeding. I read our court as never having officially decided that legal question. Maybe you can, maybe you have a different take. Yes, Your Honor. So with regard to the Sixth Amendment right to a shown in this court many times. For example, in Ogbemudia v. INS, this court found that if counsel's performance is so deficient that it impinges upon the fundamental fairness of the hearing, that is a due process violation. And that individual, even in removal proceedings, has been denied their Fifth Amendment right to due process. And there are other cases that make that argument as well that show that the Fifth Amendment due process protects individuals in removal proceedings. And whenever an attorney is so deficient that it cuts off the relief, that is a due process violation under the Fifth Amendment. Let me ask you a more basic question about, one of the grounds relied on by the BIA was that your client didn't demonstrate past persecution or reasonable fear of future persecution. And as I saw the record, the only thing that your client relied on was the murder of her husband, which of course was horrible. And she was made to pay, give gang members money or goods from her funeral. And when she went to the funeral for her husband, the woman came up and made a threat to her. You know, law in this area is so tough, but we've got numerous cases that say that you, that the persecution of person A can't be attributed to person B and threats alone are just not sufficient to make it out. So how do you get around all that? Yes, Your Honor. Threats with nothing more does not amount to persecution. However, the facts of the case reflect so much more than that. Not only were their threats made over a long period of time, but they're also- Tell me what other threats were made other than the ones I just mentioned. Yes, Your Honor. For example, the one that they were made to both Mr. Vieda and Ms. Lopez de Vieda in their home, where they arrived one night demanding that they provide them into Ms. Lopez de Vieda, them both falling to the floor. And then they demanded that she instead provide the services. And when she refused, they said, if you do not collaborate with us, we will hurt you. We will kill you and your entire family. That is just one example, Your Honor, of another instance that just goes beyond just them asking for money and beyond just a murder that characterizes happening by happenstance. However, that is not the case. If you look at the circumstances around the murder, it is not just a crime gone bad. This man was shot at least nine times by at least three different assailants in his vehicle, about a thousand steps away from a police station with his wallet still in his car and his truck still parked there. This was no because of his participation in the transportation co-op and because of his political opinion that was pro-law and against gang membership. Your Honors, this is an asylum case. It is a strong asylum case, but for the attorney's deficient performance that was so egregious where he failed to elaborate on these facts that I just spoke of that are clearly in the record that failed to show how they fall within the legal framework of asylum. And then the fact that he cut off the political opinion ground of relief in asylum, that all shows just how egregious they were violated with regard to their Fifth Amendment right to due process, that they did not have their fair being court, that their facts were not heard. And Ms. Lopez-DeFegeda, she is not a sophisticated party and she relied on this attorney to do his job. You contend that the lawyer should have argued that opinions that belong to a group that believed in law and order was a viable group for purposes of asylum. Your Honor, that's with regarding political opinion. You say he should have argued that. I want you to tell me what case is close to that, which recognizes that or something similar to that as a viable claim for asylum. Yes, Your Honor. In Rivas Martinez, which was decided by this court, there was a woman who failed, who refused to give gang services, who refused to help them. And that was found to be a valid political opinion, even though she did not explicitly say to them, I am against your gang activities. I am pro-law. That was enough. And that this court held that you do not have to full heartedly seek death in order to have a viable political opinion. And that case was remanded, Your Honor. And that is exactly analogous to this case here with regard to Ms. Lopez-DeFegeda and Mr. Villeta and their political opinion in this group. As the gang members, they were a group that the government was unable or unwilling to control as evidenced by the fact that he was shot again, at least nine times, about a thousand steps away from a police station. Was there any other evidence that the police were unwilling to go after gang members? Your Honors, now this would be a perfect example of where an expert or other fact testimony would have been extremely valuable because all the times that Mr. Villeta was assaulted before, they did not make a police report because it was the consensus that the police were working with the gang members. And that was the consensus in this town, in this community. And had there been more factual information brought forward, more evidence, he could have called the sons who are right there in the courtroom, ready to testify. He could have gotten telephonic evidence. He could have called an expert. He did none of these things. And it is clear from the transcript in the record that Mr. Rodriguez, that he did not even have a theory of the political opinion argument whatsoever. Ms. Klump, let me ask you, getting back to what Judge Davis asked you, you used Rivas Martinez, I think, as your most applicable case. As I recall, the person there belonged to an organization that would be considered pro-government. She had family members who worked for the government. It seems to me it was a much more explicit pro-government, anti-whatever the opposition would be called position. I'm not saying that therefore your client doesn't meet political opinion, but there certainly are some distinctions. It seems to me that insofar as knowledge of the guerrilla group or whoever those threatening her may be, is one of the key things here in deciding whether she's entitled to this kind of relief. What is the knowledge of the group that would be at all comparable to what was occurring in Rivas Martinez? Yes, Your Honor. So again, Mr. Villeda was a member of a transportation co-op. He delivered services. He had a very distinctive looking vehicle. Over the years, he had refused services to them and refused to help them, refused to serve them, was threatened multiple times. He expressed that. She also expressed that that night. So she had her own political opinion. But as you're saying with the family members, that there was more context around that. Here too, Mr. Villeda's imputed political opinion on her also strengthens this case. And Your Honor, I see that my time is running out. May I briefly conclude? May you do what? May I briefly conclude? You may give a conclusion. Yes. Thank you. Petitioners in this case were not given their fair day in court. Prior counsel did not elaborate on the facts of this case. He did not bring them forth. He did not make a legal opinion of this case. He did not make a theory of this case. He did not have the requisite legal knowledge in claim. The facts show that they were persecuted because of their particular social group and also because of their political opinion. And this case requires a remand so that they may have their fair day in court as they are entitled to under the Fifth Amendment of the United States Constitution. All right, Miss Klum. I don't know if the government's attorney will need it, but you can add a minute to her time. You may proceed. Thank you. My name is Monica Anton, appearing on behalf of the Attorney General of the United States. May I ask you who that is today? Today, it's Robert M. Wilkinson. Unless something has happened in the last 45 minutes that I'm not aware of. We've been changing case names with some frequency. Wanted to see you. Yes, we have. On the subject of the ineffective assistance of counsel claim, the primary feeling in that claim is that it's largely theoretical. The topic of matter of LEA, for example. It's true that matter of LEA says that a family may be a cognizable social group, but it then undermines the nexus claim in this case because it states that harm to a family member does not establish nexus to the membership in the family based social group. So in that sense, the IJ applied matter of LEA as it was written to nexus and it undermines their claim and counsel failure to brief matter of LEA was not prejudicial. Let me ask you the same thing I asked probably unfairly a student advocate who would not have through all this. How unusual was the level of legal argument and legal presentation in this case compared to the usual hearing before an IJ? I would characterize it as slightly above average in that counsel did articulate the social group. He specifically said the social group consists of the family members of Mr. Vieta and it's very common for people to fail to articulate their social group. And he made a closing argument on the basis of that social group. He also elicited testimony from Ms. Lopez that family members of other transportation cooperative members experienced the same types of threats. So in terms of briefing a case or it's not unusual that counsel for an applicant would not cite a specific case and in particular because it would have undermined the nexus analysis in this case. Well, we won't rely on anecdotal observations, but I didn't want to know your sense of it. You may proceed. The other basis for the ineffective assistance of counsel claims, for example, the failure to introduce expert witness testimony, the failure to call the two young men who are the petitioner, the other petitioners in this case also is largely theoretical in that we don't have any evidence of what the expert would have testified about that would have defeated the nexus finding that was positive in this case. The evidence in this case shows that the gang members were solely interested in forwarding a criminal endeavor and in the absence of any evidence that was identified in the motion to reopen otherwise, we have not defeated that counsel did not adequately prepare Ms. Lopez to testify. But again, we have no indication of what else she would have testified to beyond her testimony, which was found credible as to why the gang members killed Mr. Vieda and why they threatened her. And so I want to ask you the question I asked the other side about how you read our our law on this Fifth Amendment right to effective counsel in immigration proceedings. I know that I know the BIA is recognized as a right and a majority of circuits have. But in most of the cases I read, we say we assume without deciding. So what's your read of our case law? Have we officially recognized that right or or not on your reading? I have not specifically researched that issue, but I do not recall seeing a case specifically holding that. And I would say in this case, because the failure to establish prejudice makes it unnecessary for us to reach that issue in this case. And as the board has said, the government's position, the BIA has recognized the rights, I take it the government's position is that the Fifth Amendment, there is a Fifth Amendment right, generally speaking in this context. Broadly speaking, yes. And it's a Fifth Amendment right, rather than a Sixth Amendment right in criminal cases. So it's grounded in the Fifth Amendment right to due process, generally speaking. Yes. And and of course, the board has matter of lazada in which it sets forth the procedural requirements, but meeting those requirements is not sufficient to establish an ineffective assistance of counsel claim, particularly when the allegation is that counsel failed to undertake to make certain arguments or present certain evidence. There must be something more than a theoretical description of what that evidence would have been. Saying a proffer must be made before you can consider a claim that, let's say, he didn't bring forth evidence? Yes, especially for something like the expert witness testimony, we'd have to know what the expert would have testified about that would have given context to the claim to show that it was on account of a protected ground. And on the issue of political opinion, for example, and counsel failure to bring forth political opinion in the motion to reopen, we have Ms. Lopez's statement of her political opinion, but we have nothing more than that. And the statement of an applicant's possession of a political opinion, the fact that she has a political opinion is not enough to show that she was targeted on account of that opinion. And the board was not requiring her to tell the gang, I am politically opposed to you. What the board was saying was that there's no evidence in the record that she ever expressed a political opinion at all, that she was involved in any sort of political activity. And I believe the argument was made that the political opinion also belonged to Mr. Rieda, which is a new claim that's being raised right now. And that would be an imputed political opinion, which is again, not present here. And to the extent that the police report shows the very violent, of course, tragic death of Mr. Rieda, the police report also states that police officers heard gunshots and immediately responded. And that statement is inconsistent with this suggestion that the police are complicit with gangs. So that would further undermine the reliance on the police report to show an anti-police corruption political opinion. And it also undermines the claim that the police were complicit. On the issue of nexus to a particular social group, the family, of course, being a particular social group, we have the claim that Mr. Rieda's membership in the transportation cooperative should be considered an aspect of that group. But it was neither exhausted in the fact that it was not raised to the IJ, and it was not raised in the motion triumphant. So it was not exhausted on both counts. And it's important to identify the characteristics that forms the basis of the social group, because that must be substantiated through factual evidence. And there's no evidence in this record, for example, of how Salvadoran society perceives transportation cooperative members. So that analysis of whether the social group would be cognizable could not be conducted. Well, if that would be the stronger claim, using that more particular social group, doesn't that support the theory that the attorney handling this was ineffective? At that point, we go back to the fact that there is no evidence submitted with the motion triumphant that also substantiates that claim. So it's not been exhausted, and it's not been substantiated at either stage of the proceeding. And that failure to substantiate it in the motion triumphant is part of why they did not establish prejudice. And in addition, the board is criticized for using the word targeted to show that it held Ms. Lopez to a higher standard. But the board was using the word targeted to connote motive. What was the gang's reason for targeting Mr. Vieira? It was not used to hold her to a higher standard. And as with many of the gang claims that we see, the sad truth is that the gang was solely interested in its criminal enterprise. It was not motivated by any animus toward this family in particular. And in the absence of any such evidence, this court should deny the petition for review. And if the court has no further questions, the government rests on the brief. Thank you. We'll hear in response, in rebuttal. Yes, Your Honors. May it please the court. The government's arguments are undermined by a case I'd like to bring to the court's attention. Pena-Aseguera v. Barr, 936F3249. And we'll be happy to do a Rule 28J with respect to the case. It's not in our briefs, I don't believe. But this case is a case where matter of L.E.A. was the grounds for a remand. And the Fifth Circuit, this circuit, found that matter of L.E.A. is so important because even after the latest iteration in matter of L.E.A. from the Attorney General, that if L.E.A. is not fully considered, and in that case it wasn't, then a Pena-Aseguera v. Barr. Well, counsel, it seems to me that both the I.J. and the V.I.A. did with some degree of thoroughness, is not a word you'll accept, but more than cursory examination discussed it. I mean, your argument here is an effective assistance to counsel. And the argument by the government, which at least is a starting point, is that there's no prejudice because all this was reviewed. How does that case you're citing to us fit with that? Because, Your Honor, the Pena-Aseguera case makes clear that the latest iteration of matter of L.E.A. is the one that must be considered. And if the I.J. or V.I.A. made a decision that did not take that into account, then that could form the basis of a remand because the latest iteration wasn't considered. The other reason, quite frankly, is, and this goes to Judge Davis's question, there were numerous errors on the part, forget about the substantial prejudice, forget about the ineffective assistance for a moment, but there were numerous errors that riddled the V.I.A.'s and the immigration judge's decisions. For example, the fact that there was no persecution here. Well, the case law is clear that there can be persecution if the threats are made and then carried out to a family member. And we've cited those cases in our briefs. We've cited- I just want to ask you, what kind of factual support do you find in the record that these threats and actions were taken for any reason other than criminal activity to get more profits or get more money? What is in the record that would support anything else? Your Honor, this is a very clear case of retaliation. The short answer is this. It's an excellent question. The short answer is there is no question that this was retaliatory action. The murder of this family member was retaliation. Why was it retaliation? Because they came to his doorstep. They attacked him because he wouldn't transport gang members for their illicit activities. He refused. And again, this is important. The government has presented absolutely no rebuttal evidence. It's uncontroverted in the record. So you have to take it as true that the gang members came to his house, attacked him, bleeding from the mouth. They fell into Mrs. Lopez de Villegas, our petitioner. Petitioner refused. Then later, a couple of days later, the husband is gunned down a thousand steps from a police station. Guess what? They didn't take the wallet. They didn't take the truck. They didn't rob him. This was retaliation. What more nexus could the government require from my client? This is not a case of just a private actor that just goes out and wants to do some criminal activity. That is an impoverished, illogical, and I'm sorry to say, an absurd reading of the facts in this case. So forget about the fact that there was substantial prejudice. And to Judge Costa's point, take a look at Assad versus Ashcroft. Take a look at Paul v. INS. Take a look at all these progeny of these cases throughout the years in the Fifth Circuit. Those cases show that ineffective system counsel exists if it exists, if the assistance was so deficient as to impinge on the fundamental fairness of the hearing. And this is the law in this circuit. It's the law, as Judge Costa correctly said, under matter of Lozada. It's the law, Board of Immigration Appeals. And we should, in this case, I see my time is expiring, but I'll briefly conclude. In this case, this is a clear case of not only ineffective assistance, which demands a remand, but it's also a case that's a clear case of asylum. And so this court should either remand or grant asylum. Thank you. Thank you. Thank you to each counsel, all of whom did an excellent job today. DOJ has a good program, but apparently University of Houston does, too, for preparing advocates. We will take this case on our advisements. Thank you.